UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHEILA J. ZAMBON,           )
                           )
      Plaintiff,         )
                           )
v.                          )     No.  3:17-cv-507
                           )     Judge Phillips
SHAWN CRAWFORD, *et. al.*,    )
                           )
      Defendants.     )

## MEMORANDUM OPINION

This matter is before the Court on Defendants Shawn Crawford, Todd Nallion, Matt Nicol, and Don Myers's ("City Defendants'") motion for summary judgment [doc. 93], Plaintiff's Motion for Dismissal of Summary Judgment [doc. 98], which is more properly construed as a response to the motion for summary judgment, and Plaintiff's motion to amend or supplement the amended complaint [doc. 96]. Each of these motions have been fully briefed. For the reasons stated below, Plaintiff's motion to amend or supplement [doc. 96] will be denied, the City Defendants' motion for summary judgment [doc. 93] will be granted, and Plaintiff's motion for dismissal of summary judgment [doc. 98] will be denied. Furthermore, as discussed in detail below, the Court hereby provides the parties with notice of its intent to *sua sponte* grant summary judgment in favor of Defendant Laura Porch, in accordance with Federal Rule of Civil Procedure 56(f).

# I.       Relevant Facts

On the afternoon of November 11, 2017, Laura Porch was sitting in her car in the parking lot of a shopping center in Sevierville, Tennessee, when she saw a blue crossover-type vehicle back up and hit a Mustang that was parked outside the Staples. [Doc. 97-1 at 4].  Ms. Porch saw the driver exit the vehicle, inspect the damage, return to her vehicle, and leave the scene.  [*Id*. at 4].  Ms. Porch then went inside the Staples store to report the incident, and the Staples manager instructed her to call the police.  [*Id*.].  Ms. Porch then called the Sevierville Police Department.  [*Id*.; Defendants' Exhibit 5 ("Exh. 5") (recording of telephone call)].  On the call, Ms. Porch informed dispatch that she had just seen a car back into another car and then leave the scene.  [Exh. 5].  Ms. Porch described the vehicle that was hit as a blue convertible Mustang, and the one that left the scene as a blue Toyota crossover.  [*Id*.].

Officer Crawford responded to the scene, where Ms. Porch was standing outside of her vehicle, two parking spots away from the Mustang that was hit.  [Defendants' Exhibit 6 ("Exh. 6") (dashcam footage from Officer Crawford's cruiser)].  Ms. Porch informed Officer Crawford that she had previously been in another parking spot, and saw a woman in a blue Toyota crossover back into a parking spot and hit the Mustang.  Ms. Porch stated that the driver stopped when she hit the Mustang, got out of the car, walked around to look at where she had hit the Mustang, then got back in her car and drove off.  [*Id*.].  Photographs from the scene indicate that the Mustang was light blue, and had the front driver-side headlight busted out, as well as significant scraping to the front passenger bumper.  [Doc. 93-5].  There was blue paint and broken pieces of the headlight around the car.  [*Id*.].

Officer Crawford asked Ms. Porch if she got the license plate number of the car that left, and Ms. Porch provided a possible plate number of E1653W.  [Exh. 6].  Ms. Porch stated that she could not see the county on the license plate because something was covering it. Ms. Porch stated that the damage on the crossover was on the rear passenger side of the vehicle.  [*Id*.].

Officer Crawford called in the plate number but was unable to get a match.  [*Id*.]. Officer Crawford asked Ms. Porch whether she was sure about the license plate number, and she responded that she was not "100 percent sure," but knew that the first letter was E. Ms. Porch stated that the vehicle had left the parking lot and turned left on the main road. Ms. Porch again stated that the car was a Toyota, a "newer model," possibly either a RAV-4 or CR-V.  Officer Crawford asked Ms. Porch to give a written statement.  Officer Crawford then made contact with the driver of the Mustang, and spoke to the car's owner, who declined a police report.  [*Id*.].

While Officer Crawford was with Ms. Porch at Staples, Ms. Zambon called the Sevierville Police Department, stating that she was at the post office on Dolly Parton Parkway, and someone had hit her car and taken off.  [Defendant's Exhibit 9 ("Exh. 9") (recording of call to police department)].  She stated that she did not know what type of car had hit her, because she was in the post office when it happened.  She stated that she was driving a blue 2015 RAV-4.  [*Id*.].  While talking to the driver of the Mustang, Officer Crawford received information about the call from the post office involving a RAV-4. [Exh. 6].  Ms. Zambon's receipt from the post office indicates that she exited the post office around 4:44 p.m.  [Doc. 103 at 8].

Officer Crawford drove to the post office, which was just down the road from the Staples. [Plaintiff's Exhibit 7 ("Exh. 7") (dashcam footage from Officer Crawford's police cruiser)]. A royal blue Toyota RAV-4 was sitting in the parking lot. [*Id.*]. Officer Crawford immediately called in the vehicle's license plate, which was E1653V, only one letter off from the plate number provided by Ms. Porch. [Doc. 93-6 at 3; Exh. 7]. The county on the license plate is partially covered by a portion of the license-plate cover, which read "BUCKEYES." [Doc. 93-6 at 3]. Dispatch reported that the vehicle was registered to Sheila Zambon. [Exh. 7]. Officer Crawford made contact with Ms. Zambon, who exited the vehicle, and showed Officer Crawford damage to her vehicle on the rear passenger side. Officer Crawford asked Ms. Zambon where the damage occurred, and Ms. Zambon responded "right here." Ms. Zambon stated that she was in the post office for "quite a while," and someone must have hit her car while she was inside. Officer Crawford asked Ms. Zambon for her license, registration, and insurance, and she complied. Officer Crawford then asked Ms. Zambon if she was positive the damage to her vehicle happened at the post office, and she stated that she was 100% positive. Officer Crawford warned Ms. Zambon that lying to a police officer is a felony offense. Ms. Zambon asserted that she was not lying, and Officer Crawford then read Ms. Zambon her *Miranda*[1] rights, and Ms. Zambon stated that she understood. Officer Crawford then asked Ms. Zambon whether she wanted "to start over again," and Ms. Zambon yelled "it happened right here." [*Id.*].

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Officer Crawford again informed Ms. Zambon that lying to a police officer is a felony offense, and Ms. Zambon yelled "I'm not lying!" [*Id.*]. Officer Crawford informed Ms. Zambon that he had a witness who had informed him that the accident had not happened at the post office, but at Staples. Ms. Zambon denied that the accident happened at Staples. Officer Crawford informed Ms. Zambon that the witness provided Ms. Zambon's license plate number and vehicle as the one that left the scene at Staples. Ms. Zambon then produced a paper, which appears to be her receipt from the post office, and Officer Crawford responded that he did not deny that she had been at the post office, but she had previously been at the Staples. Ms. Zambon admitted that she was at the Staples, and began searching for her receipt to tell Officer Crawford the exact time that she was at Staples. Ms. Zambon asserted that she parked at the end of the parking lot, away from all other cars at Staples. [*Id.*]. Ms. Zambon handed the receipt to Officer Crawford, who noted that the receipt indicated Ms. Zambon had been at Staples at 4:30 p.m. [Doc. 103 at 8; Exh. 7]. Officer Crawford then asked dispatch what his call time to Staples was, and dispatch responded that the call time was 16:42 (in other words, 4:42 p.m.). [Exh. 7]. Officer Crawford pointed out damage to Ms. Zambon's vehicle that matched the paint of the blue Mustang at Staples. Officer Crawford asked Ms. Zambon if she wanted to continue lying, and she again asserted that she was not lying. Officer Crawford then informed Ms. Zambon that he would have the witness come to the scene. Ms. Zambon stated that she would like to speak to Officer Crawford's supervisor. [*Id.*].

Officer Crawford then radioed dispatch, asking them to call Ms. Porch and ask her to come to the post office to identify a suspect. [*Id.*]. Meanwhile, Ms. Zambon appears to

talk to someone on her cell phone.  Officer Crawford also requested back-up at the post office, noting that Ms. Zambon wanted to speak to supervisors.  Officer Crawford then began taking photographs of Ms. Zambon's vehicle.  Ms. Zambon tells the individual on her cell phone that Officer Crawford is taking photographs.  Officer Crawford asked if it was Ms. Zambon's husband on the phone, and Ms. Zambon confirmed that it was her husband, Joseph Zambon.  Officer Crawford briefly spoke with Mr. Zambon about the situation, but ended the conversation when Mr. Zambon began yelling and cursing.  Officer Crawford then continued taking photographs of the vehicle.  [*Id*.].  These photographs show significant scraping along the back passenger side of the RAV-4, as well as some lighter blue paint transferred from another vehicle.  [Doc. 93-6 at 1-2].  Mr. and Ms. Zambon continue talking amongst themselves about why Officer Crawford does not have a partner present, why he is trying to "railroad" Ms. Zambon, and why the witness is not there yet.  [Exh. 7].

When Ms. Porch arrived at the post office, Officer Crawford asked her if Ms. Zambon was the person that she saw hit the Mustang at Staples.  [*Id*.].  Ms. Porch took a moment to look and then responded "yes."  Officer Crawford then began explaining the situation to other police officers who had arrived at the scene.  Another officer approached Ms. Zambon, who began telling her side of the story to the officer, although the audio of this exchange cannot be made out, as Officer Crawford was also talking to a third officer to arrive on the scene.  One of the other officers present approached Officer Crawford and said "I tried to talk to her—do what you gotta do."  Officer Crawford and the other officer discussed the evidence that indicated that Ms. Zambon was lying.  The other officer asked

6

Officer Crawford how he found Ms. Zambon, and Officer Crawford explained that Ms. Zambon had called in a hit-and-run at the post office. Officer Crawford then asked the other officer to point out to Ms. Zambon that there was no debris or marks on the ground near her car, as there would be if the accident had occurred at the post office. The officer goes to tell Ms. Zambon this information, however, the beginning of this conversation cannot be heard. [2] [*Id.*].

    Once the audio begins picking up the conversation, Ms. Zambon can be heard repeatedly stating "I am not lying." [*Id.*]. Officer Crawford then placed Ms. Zambon under arrest. Ms. Zambon asked to turn her vehicle off and retrieve her purse, and the officers state that they will take care of it. Ms. Zambon, responded that there "better not be anything come up missing out of my purse." Officer Crawford informed Ms. Zambon that she would be taking her purse with her, and he would grab it for her. Ms. Zambon stated "hope nothing doesn't fall out," and then tells Officer Crawford "I hope you enjoy federal court." One of the officers can be seen picking up Ms. Zambon's purse from the RAV-4 passenger seat, and handing it off to Officer Crawford. Officer Crawford then spoke to Ms. Porch to again confirm that the woman that she saw at the post office was the same woman she saw leave the scene of the crash at Staples. Officer Crawford stated that Ms. Porch would need to finish her statement to indicate that she identified the suspect at the post office. Ms. Zambon later asked Officer Crawford if he got her cell phone, and he responded that he

---

[2] It appears that, at this time, Officer Crawford is in his police cruiser, and, as a result, the audio being recorded is that inside the police cruiser. Once the sound of a car door slamming is heard, around 22:54 in Exhibit 7, the audio switches over, and the conversation being had outside the police cruiser can be heard.

did.  After leaving Ms. Zambon alone in the cruiser for a few minutes, Officer Crawford reentered the car and began driving Ms. Zambon to the jail.  [*Id*.].

Ms. Zambon was charged with leaving the scene of a crime, in violation of Tenn. Code Ann. § 55-10-104, and filing a false report, in violation of Tenn. Code Ann. § 39-16-502.  [Doc. 93-1 at 1-2].  Ms. Zambon pleaded guilty to leaving the scene of a crime, in violation of § 55-10-104.  [Doc. 89-1 at 4].  Ms. Zambon received a 30-day suspended sentence, a $50 fine, and stipulated to the underlying facts.  [*Id*.].  The charge for filing a false report was dismissed, with the following special conditions: "dismissal contingent on payment of court costs, stipulation to fact[.]"  [Doc. 98-1 at 4].

Ms. Porch's handwritten statement confirms the information that she gave to Officer Crawford on the dashcam footage, specifically, that she saw "someone in a newer blue Toyota crossover backing into a parking space hit the front end of a blue convertible mustang."  [Doc. 93-2].  Ms. Porch's statement continues to say that the driver got out of her vehicle, circled her car, paused where the damage was on both cars, then got into her vehicle and left.  [*Id*.].

Don Myers was the Chief of Police for the City of Sevierville in 2017.  [Doc. 93-7 at 1].  However, he did not respond to the call related to the hit-and-run, and played no role in the decision to bring charges against Ms. Zambon.  [*Id*.].

In her deposition, Ms. Zambon stated that Chief Myers had violated her constitutional rights because she and her husband filed a complaint against Officer Crawford, and Chief Myers told her that she would be notified about the results of the investigation, but she was never notified.  [Doc. 97-at 11].  Ms. Zambon admitted that she

was provided a copy of the audio and video related to her arrest, but did not believe that it accurately depicted what occurred. [*Id*.]. As to Officer Nicol, Ms. Zambon stated that he violated her constitutional rights by "trying to get me to admit I did something I didn't do" and "st[icking] up for what Officer Crawford was saying[.]" [*Id*. at 12]. Additionally, Ms. Zambon stated that Officer Naillon violated her constitutional rights by "st[icking] up for Officer Crawford" and not having his body cam or dash cam on. [*Id*. at 13]. Ms. Zambon asserted that Officers Nicol and Naillon had a role in deciding to charge her, because they discussed it with Officer Crawford. [*Id*.]. Ultimately, Ms. Zambon's deposition was ended when she refused to answer any questions, stating that every question was "irrelevant," and claiming her right against self-incrimination under the Fifth Amendment. [*Id*. at 19-20].

## II.     Motion to Amend/Supplement

Before addressing the pending motion for summary judgment, the Court must first address Plaintiff's "motion to seek relief," [doc. 96], in which Plaintiff requests that the Court allow her to file an addendum to her amended complaint. Federal Rule of Civil Procedure 15 governs the procedures for filing amended and supplemental pleadings. Rule 15(a)(1) allows a party to amend its pleading once as a matter of course, either within 21 days of serving it, or, if the pleading is one to which a responsive pleading is required, within 21 of service of a responsive pleading or a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Plaintiff does not qualify to amend her complaint as a matter of right under Rule 15(a)(1), because the instant motion to amend [doc. 96] was filed on May 7, 2019, more than 21 days after the Defendants' answers to the amended complaint, which were filed on May 29, 2018 [doc. 26] and June 27, 2018 [doc. 32], respectively.

Thus, to amend her complaint, Plaintiff must proceed under Rule 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court, however, must balance the harm to the moving party if she is not permitted to amend against the prejudice caused to the other party if leave to amend is granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Specifically, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citation omitted). Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

Additionally, the Court may "on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Here, Plaintiff's proposed addendum could partially be construed as a supplemental pleading under Rule 15(d), as it contains, in part, allegations regarding incidents that have occurred since the filing of the amended complaint. Nonetheless, the Court concludes that Plaintiff's proposed addendum is futile in its entirety, and therefore, the Court will deny the motion to amend.

In her proposed addendum, Plaintiff states that her claims are brought pursuant to 42 U.S.C. § 1983. Plaintiff contends that she did not receive all of the audio or video evidence in this case, and asks the Court to compel the production of such evidence. Plaintiff then implicates that the Defendants' actions were motivated by discriminatory

intent, based on her age and her ethnicity. Additionally, Plaintiff states that the Sevierville court violated the "Social Security Number Protection Act," by including her social security number on court files. Finally, Plaintiff states that, at her deposition, counsel for the City Defendants, Dan Pilkington, "tried to violate [her] civil rights when [she] refused to answer questions under the Fifth Amendment," and engaged in *ex parte* communications by talking with his clients and Ms. Porch outside of Plaintiff's hearing.

First, Plaintiff's claim that she was not provided with all of the audio and video evidence in this matter is not a separate claim for relief. The Court also finds that this claim is undermined by Plaintiff's admission, in her deposition, that she ultimately received the audio and video evidence in this case, which was submitted with the City Defendants' motion for summary judgment. To the extent that Plaintiff is attempting to allege that the video provided is incomplete, the Court has viewed the video, which is a seamless version of the events that occurred, and does not appear to be missing any period of time. Accordingly, this addition to Plaintiff's amended complaint would be futile.

Second, to the extent that Plaintiff wishes to assert that she was discriminated against based on her age and her ethnicity (which she describes as "part Native American"), Plaintiff sets forth no facts supporting these allegations. Rather, this allegation seems to merely be a repackaging of the claims in her amended complaint, which, as discussed *supra*, are not supported by the record. Repackaging her claims as a "discrimination" claim would not help her claims survive.

Third, to the extent that Plaintiff alleges that the Sevier County General Sessions Court has violated the "Social Security Number Protection Act," the Court concludes that

Plaintiff is referring to the Social Security Number Protection Act of 2010, which amended 42 U.S.C. § 405(c)(2)(C) to include language stating that no federal, state, or local agency may display the social security number of an individual on any check issued for any payment by a federal, state, or local agency. Social Security Number Protection Act of 2010, Pub. L. No. 111-318 § 2; 124 Stat. 3455 (2010). This law is patently inapplicable here, as the document containing Plaintiff's social security number is a court document reflecting the disposition of criminal charges against her, not a check for payment.

Finally, to the extent that Plaintiff wishes to add claims for relief against Mr. Pilkington, her allegations against Mr. Pilkington are frivolous. Mr. Pilkington is not legally or ethically precluded from discussing legal matters with his clients, or with Ms. Porch, without Plaintiff's presence in the conversation. Indeed, Mr. Pilkington has a duty to discuss matters with his clients, and protect the information shared in those private conversations. Moreover, Mr. Pilkington did not attempt to violate Plaintiff's Fifth Amendment rights by asking her questions at her deposition. The Fifth Amendment only protects a person against being "incriminated by [her] own compelled testimonial communications." *Doe v. United States*, 487 U.S. 201, 207 (1988) (quoting *Fisher v. United States*, 425 U.S. 391, 409 (1976)) (internal quotation marks omitted). The questions that Mr. Pilkington asked, and Plaintiff refused to answer based on the Fifth Amendment, include:

(1) Did you have an attorney in the Dollar Tree lawsuit?

(2) Are you refusing to answer?

(3) Do you know why that case was dismissed?

(4) Who is your attorney in the criminal case?

(5) Do you know the date that you went to the police department to - ?

(6) Are you done answering my questions today, Mrs. Zambon?

[Doc. 97-1 at 19-20]. Plaintiff responded to each of these questions by repeating "Irrelevant; Fifth Amendment." [*Id*.]. Nothing about these questions indicate that the answers may incriminate Plaintiff. Plaintiff is not entitled to avoid answering questions which she deems harmful to her civil action on the basis of the Fifth Amendment. Regardless, Mr. Pilkington's questions at Plaintiff's deposition were entirely proper, and any additional claim against Mr. Pilkington on this ground would be entirely meritless.

Because none of the claims contained in Plaintiff's proposed addendum have merit, any amendment or supplemental pleading would be futile. Accordingly, the Court will **DENY** Plaintiff's motion to amend/supplement [doc. 96].

## III.    Summary Judgment – City Defendants

### A.  Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once

the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**B. Analysis**

As an initial matter, Plaintiff's claims for relief are somewhat unclear on the face of her amended complaint. However, Plaintiff makes clear that this action is brought pursuant to 42 U.S.C. § 1983. The Court liberally construes Plaintiff's *pro se* amended complaint to include claims of unlawful arrest, failure to investigate a crime, unreasonable search and

14

seizure, and failure to report the results of an internal investigation against the City Defendants.

Section 1983 permits a cause of action for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983. Section 1983 does not itself create or establish any federally protected right, but rather, provides a vehicle by which a plaintiff may seek redress for deprivations of their rights established by the Constitution or federal law.  *Albright v. Oliver*, 510 U.S. 266, 270 (1994).

i.  **Failure to Investigate a Crime/Failure to Report Results of Internal Investigation**

A plaintiff cannot establish liability under § 1983 based on a mere failure to act, and "allegations that a defendant mishandled a grievance or failed to investigate a complaint are insufficient to state a claim."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Instead, liability under § 1983 must be based on active unconstitutional behavior.  Moreover, the right to have crimes investigated or prosecuted is not a fundamental protection under the U.S. Constitution.  *Krlich v. Taafe*, No. 4:17-cv-0379, 2018 WL 4537196, at *4 (N.D. Ohio Sept. 19, 2018). "A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a

right to compel a public official to act." *Id.* (quoting *Fulson v. City of Columbus*, 801 F. Supp. 1 (S.D. Ohio 1992)) (internal quotation marks omitted).

Here, Plaintiff's only claim against Defendant Myers is that he failed to provide her with information about an investigation into Officer Crawford. Even assuming that Plaintiff's allegation is true, such does not constitute a cognizable claim under § 1983. As noted above, failure to investigate a complaint or grievance is insufficient to establish liability under § 1983. Thus, Defendant Myers is not liable under § 1983, even if he failed to investigate a complaint about Officer Crawford. Accordingly, the Court will **GRANT** summary judgment in Defendant Myers's favor.

Additionally, to the extent that Plaintiff seeks to raise a claim against the City Defendants for failure to investigate a crime, namely, the alleged hit-and-run incident at the post office, Plaintiff's allegations do not constitute a cognizable claim under § 1983. Because § 1983 does not itself create an enforceable right, Plaintiff must show that the failure to investigate the hit-and-run violated a constitutional right. However, there is no federal constitutional right to have a crime investigated, or prosecuted. *See Krlich*, 2018 WL 4537196, at *4. Thus, any claim that the City Defendants are liable under § 1983 for failure to investigate the alleged hit-and-run at the post office is meritless, and the Court will **GRANT** summary judgment in the City Defendants' favor on this claim.

ii.   **Unlawful Arrest**

The right to be arrested only upon probable cause is a right secured by the Fourth Amendment to the United States Constitution. *Crockett v. Cumberland College*, 316 F.3d 571, 579-580 (6th Cir. 2003). Thus, unlawful arrest claims are Fourth Amendment claims.

16

*Albright*, 510 U.S. at 271.  "To show that an arrest violated a constitutional right, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'" *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (quoting *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010)).  Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id*. (quoting *Sykes*, 625 F.3d at 306) (internal quotation marks omitted).  An officer can lawfully arrest a plaintiff as long as there is probable cause to arrest her for some crime.  *Id*. (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

For purposes of its analysis, the Court will accept as true Plaintiff's version of events, namely, that she was not involved in the hit-and-run accident in the Staples parking lot, and was the innocent victim of a later hit-and-run accident at the post office parking lot.[3]  However, whether Plaintiff actually committed the hit-and-run offense at Staples (which she admitted as part of her guilty plea to leaving the scene of a crime) is not the key inquiry in determining whether the City Defendants arrested Plaintiff without probable cause, and are therefore liable under § 1983 for unlawful arrest.  Instead, the inquiry focuses on the information that the City Defendants had at the time of Plaintiff's arrest, and whether such information could lead a reasonable officer to believe that Plaintiff committed a crime.

---

[3] The Court notes that this version of events is belied by Plaintiff's stipulation to the underlying facts supporting her guilty plea for leaving the scene of a crime.  Nonetheless, because Plaintiff's unlawful arrest and unreasonable search and seizure claims fail, even giving such deference to Plaintiff's version of events, the Court will assume, for purposes of its analysis, that Plaintiff's version of events is true.

The Court concludes that, given the evidence available to the officers at the scene of Plaintiff's arrest, it was vastly reasonable to conclude that Plaintiff had left the scene of the accident at the Staples parking lot. At the time of Plaintiff's arrest, officers knew that a witness had called to report a hit-and-run at the Staples parking lot, and had reported that the vehicle that left the scene: (1) was blue; (2) was a CR-V or RAV-4; (3) had a possible license plate number of E1653W; (4) had damage to the rear passenger side; (5) had hit a light blue Mustang; and (6) had something obstructing the county on the license plate. Plaintiff's vehicle was, in fact, a blue RAV-4, in close proximity to the Staples, with a license plate number of E1653V, with damage to the rear passenger side, including light blue paint transfer, and had a "BUCKEYES" license plate cover that partially obscured the county designation of the license plate. Moreover, at the post office, Plaintiff herself admitted that she had previously been at the Staples where the hit-and-run accident occurred, and produced a receipt showing that she left Staples at 4:30 p.m., approximately 12 minutes before officers received a call reporting the hit-and-run. Given this evidence, it was vastly reasonable for the officers to believe that Plaintiff was the individual who had been involved in the hit-and-run in the Staples parking lot. Officers then had the witness, Ms. Porch, come to the post office, and Ms. Porch identified Plaintiff as the person who left the scene of the accident at Staples. Police had no reason to disbelieve Ms. Porch's report, particularly given the consistency of her version of events with the damage to Plaintiff's vehicle.

Viewing all of this evidence together, the Court concludes that there was probable cause for the officers to arrest Plaintiff for her involvement in the hit-and-run incident at

Staples. Even if the officers were incorrect in their belief that Plaintiff was involved in the Staples hit-and-run, the evidence available to them at the time of Plaintiff's arrest created sufficient probable cause to support Plaintiff's arrest. Accordingly, the Court will **GRANT** summary judgment in favor of the City Defendants as to Plaintiff's unlawful arrest claim.

### iii. Unreasonable Search & Seizure

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One of the exceptions to the warrant requirement is a search incident to a lawful arrest. *See Weeks v. United States*, 232 U.S. 383, 392 (1914); *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001). "When conducting a search incident to arrest, police may search items within the immediate control of the person arrested." *Northrop*, 265 F.3d at 379 (internal quotation marks omitted). Another exception to the warrant requirement is an inventory search, including the search of closed containers, as long as such is conducted pursuant to standardized procedures. *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). "Inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v. Wells*, 495 U.S. 1, 4 (1990) (quoting *Colorado v. Bertin*, 479 U.S. 367, 372 (1987)) (internal quotation marks and alterations omitted).

Plaintiff asserts that the City Defendants conducted an unreasonable search and seizure "by taking plaintiff's purse, cell phone and car keys, going through her purse and

removing her money." [Doc. 24 at 2]. However, as the dashcam video evidence makes clear, the officers did not search her car or purse prior to her arrest. Indeed, the video evidence never shows the officers conducting a search of Plaintiff's purse or car, but rather, shows officers turning off Plaintiff's car, at her request, and retrieving her purse, again, at her request. As to Plaintiff's purse, the dashcam video specifically shows that one of the officers retrieved it from the passenger seat of Plaintiff's vehicle, handed it to Officer Crawford, who then sat it on the front of his police cruiser, and picked it up again right before leaving the post office with Plaintiff in the police cruiser. However, even if the officers had searched Plaintiff's car and purse, such would have constituted a valid search incident to arrest. To the extent that Plaintiff is alleging that officers conducted a full search of her vehicle and purse after her arrest, such would constitute a valid inventory search, which police may conduct to protect themselves from allegations, such as Plaintiff's allegation, that the officers took her money from her purse in the course of her arrest.[4] Accordingly, the Court finds that there is no genuine issue of material fact as to this claim, and the City Defendants are entitled to judgment as a matter of law. Therefore, the Court will **GRANT** the City Defendants' motion for summary judgment on this claim.

In sum, the Court finds that there is no genuine issue of material fact regarding any of Plaintiff's claims against the City Defendants, and the City Defendants are entitled to

---

[4] To the extent that Ms. Zambon is attempting to raise a tort claim relating to her allegation that money was taken from her purse, such claim should be raised pursuant to state law, and the Court will decline to exercise supplemental jurisdiction over this potential claim. *See* 28 U.S.C. § 1367(c)(2) (a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims after dismissing all claims over which the court has original jurisdiction).

judgment as a matter of law. Accordingly, the Court will **GRANT** the City Defendant's motion for summary judgment [doc. 93] and **DENY** Plaintiff's motion for dismissal of summary judgment [doc. 98]. This action will be dismissed as to the City Defendants.[5]

## IV. Summary Judgment - Defendant Porch

Defendant Porch, the witness to the hit-and-run in the Staples parking lot, is representing herself *pro se* in this matter. Defendant Porch has not filed a motion for summary judgment. Nonetheless, the City Defendants have suggested that the Court should *sua sponte* grant summary judgment in Defendant Porch's favor.

Under Rule 56(f) of the Federal Rules of Civil Procedure, the Court may, "[a]fter giving notice and a reasonable time to respond, . . . grant summary judgment for a nonmovant[.]" Fed. R. Civ. P. 56(f)(1). For the reasons stated below, the Court intends to grant summary judgment in favor of Defendant Porch. If Plaintiff wishes to respond in opposition, Plaintiff should file her brief, responding to the issues discussed below, within **14 days** from the date of this order. Plaintiff's arguments should be limited to why the Court should not grant summary judgment in favor of Defendant Porch, as this Court has already granted summary judgment in favor of the City Defendants.

First, the Court finds that Plaintiff has alleged absolutely no wrongdoing on the part of Ms. Porch in the amended complaint. In her initial complaint, which is no longer

---

[5] The City Defendants allege that the City of Sevierville is not a proper Defendant in this action, but nonetheless, raise arguments as to why the City is not liable under § 1983. The Court agrees that the City of Sevierville is not a proper defendant in this case. At no point in her filings has Plaintiff identified the City as a defendant in this action. Nonetheless, the Court notes that, even if the City were a proper defendant, the City would be entitled to summary judgment for the same reasons as the City Defendants.

operative, Plaintiff identified Ms. Porch as being involved via "participation," in the events surrounding her arrest, but still identified no wrongful conduct on the part of Ms. Porch. Moreover, in her proposed "addendum" to her amended complaint, Plaintiff again identifies no conduct of Ms. Porch that could even allegedly serve as the basis for this lawsuit against Ms. Porch. Instead, Plaintiff's amended complaint centers around the allegedly wrongful conduct of Officer Crawford, and provides little to no information as to Ms. Porch's alleged involvement. Accordingly, the Court concludes that Plaintiff has not stated a claim for relief against Ms. Porch.

Second, even if the Court were to read into Plaintiff's complaint an allegation that Ms. Porch engaged in some wrongful conduct by providing information to police about the events at the Staples parking lot, this allegation does not constitute a cognizable claim under § 1983. Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial do not expose a private individual to liability under § 1983, because their actions are not taken "under color of law." *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). Because Ms. Porch's actions were not taken "under color of law," she cannot be sued under § 1983.

Third, even if the Court were to read into Plaintiff's complaint an allegation that Ms. Porch purposefully lied to the police about Plaintiff's involvement in the hit-and-run at Staples, there is no *genuine* issue of material fact as to this claim. There is no question that Ms. Porch exactly identified Plaintiff's vehicle, including the location of damage to the vehicle from the hit-and-run incident at Staples. If the damage to Plaintiff's vehicle occurred at the post office, as Plaintiff alleges, there is no way that Ms. Porch, who was at

Staples with Officer Crawford at the time that Plaintiff's vehicle was allegedly hit in the post office parking lot, would have been able to know the exact location of the damage to Plaintiff's vehicle. Moreover, Plaintiff's allegation that she was not involved in the hit-and-run at Staples is completely belied by her admission to this fact in her guilty plea to the charge of leaving the scene of a crime. To the extent that Plaintiff now contends that her guilty plea was coerced, this civil action is not the proper venue for such allegation. Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Ms. Porch's report to police about the hit-and-run incident at Staples was true.

For these reasons, the Court intends to grant summary judgment in favor of Defendant Porch under Rule 56(f). As stated above, if Plaintiff wishes to object to the grant of summary judgment on these grounds, Plaintiff **MUST** file a brief discussing **only** the issues raised in Section IV of this memorandum opinion **within 14 days of the entry of this memorandum opinion**.

## IV. Conclusion

For the reasons set forth herein, the Court finds that there are no genuine issues of material fact present in this matter, as to the City Defendants. Accordingly, the City Defendants' motion for summary judgment [doc. 93] will be **GRANTED**, and Plaintiff's motion to dismiss summary judgment [doc. 98] will be **DENIED.** Plaintiff's motion to amend or supplement [doc. 96] will be **DENIED**, because any amendment or supplementation would be futile. The case against the City Defendants will be **DISMISSED**. Furthermore, the Court hereby **NOTIFIES** the parties of its intent to grant summary judgment in favor of Defendant Porch, pursuant to Federal Rule of Civil

Procedure 56(f).  Plaintiff's objections **MUST** be filed within <u>**14 days**</u> of the entry of this memorandum opinion.  An appropriate order will follow.

                      <u>  s/ Thomas W. Phillips                   </u>
                      SENIOR UNITED STATES DISTRICT JUDGE